IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEVEN RAY BENNETT                                                                                      PLAINTIFF

V.                                             NO. 13-5149

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Steven Ray Bennett, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his current application for SSI on March 31, 2010, alleging an inability to work since December 18, 2008, due to tension headaches and recurrent headaches, ruptured disc C5 and C7 surgical repair, severe pain which radiates from neck to shoulder and arm, insomnia, knee pain, numbness in arms, anxiety attacks, lack of concentration and focus, and fatigue. (Tr. 175-179, 195, 208).  An administrative hearing was held on January 9, 2012, at which Plaintiff appeared with counsel, and he and his wife testified. (Tr. 28-61).

By written decision dated February 8, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - status post

cervical fusion and status/post right knee surgery. (Tr. 15). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 416.967(b) as occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 6 hours out of an 8 hour work day, and sit at least 6 hours out of an 8 hour work day, all with normal breaks. He must avoid work above shoulder level.

(Tr. 16). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would be able to perform his past relevant work as an electrical assembler. (Tr. 23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 16, 2013. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 16, 17).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from

doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.    Discussion:

Plaintiff raises the following arguments in this matter: 1) The ALJ erred by not developing the record fully and fairly; 2) The ALJ erred in his credibility findings; 3) The ALJ erred in his RFC determination; and 4) The ALJ erred in determining Plaintiff could perform his past relevant work. (Doc. 16).

#### A.    Credibility Findings:

Plaintiff argues that the ALJ wrongfully compared Plaintiff's subjective allegations to his RFC, when he stated that Plaintiff's allegations were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 18).  It is true that in his opinion, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 18).  The use of this language may indicate that the ALJ determined Plaintiff's RFC prior to making his credibility determination. This is similar to the language used in Bjornson v. Astrue, 671 F.3d 640, 644 (7th Cir. 2012), where the Court was critical of the use of this "boilerplate" language. In Bjornson, the Court stated that the government's brief described this passage as a "template," by which it means a "passage drafted by the Social Security Administration for insertion into any administrative law judge's opinion

to which it pertains." Id. at 644-645. The Court further elaborated:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" - above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be. ...
>
> The Social Security Administration had better take a close look at the utility and intelligibility of its "templates."

Id. at 645-646. The Bjornson Court ultimately reversed and remanded the matter. Id. at 648. Cases that have subsequently considered the Bjornson case have distinguished the facts of their cases. In Bishop v. Commissioner of Social Security, No. 14-1042, 2014 WL 4347190 (4th Cir., Sept. 3, 2014), the Fourth Circuit noted that the ALJ's language was similar to that in Bjornson, but found that the ALJ cited "specific contradictory testimony and evidence in analyzing Plaintiff's credibility and averred that the entire record had been reviewed. Given that this case is not one of exceptional circumstances, see Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997), we uphold the ALJ's credibility determination"[1] Bishop, 2014 WL 4347190 at *2.

In Romero v. Colvin, 563 Fed. Appx. 618 (10th Cir. 2014), the Tenth Circuit declined to

---

[1] In Eldeco, the 4th Circuit stated that exceptional circumstances included cases where a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. Id. 132 F.3d at 1011, quoting NLRB v. McCullough Environmental Services, Inc., 5 F.3d 923, 928 (5th Cir. 1993).

reverse the case on the ground that the ALJ used the same boilerplate language as was used in Bjornson, stating that the "use of ... boilerplate is problematic only when it appears 'in the absence of a more thorough analysis.'" Romero 563 Fed. Appx. at 620-621, quoting Keyes-Zachary v.Astrue, 695 F.3d 1156, 1170 (10th Cir. 2012). The Court noted that the ALJ discussed various credibility factors explicitly.

Finally, in Scott v. Colvin, No. 4:12-CV-01569, 2013 WL 6047555 (S.D.Tex., Nov. 14, 2013), the Court was presented with the same argument regarding the use of the boilerplate language, and the application of Bjornson. The Court determined that the ALJ provided more than "mere boilerplate" language, and listed several activities that he found contradicted Plaintiff's subjective limitations. Scott. 2013 WL 6047555 at *11-12. The Court concluded that the ALJ properly detailed the specific evidence that led him to find that Plaintiff's testimony was not fully credible and that he did not err in his credibility finding and subsequent RFC determination. The Court further stated that there was no evidence whatsoever that the ALJ first pre-determined Plaintiff's RFC before evaluating the credibility of Plaintiff's testimony. "'In fact, the language of the decision and the hearing transcript conclusively show that the ALJ considered all of the evidence in the record, including Scott's testimony. Thus, the ALJ evaluated Scott's credibility against the level of disability that she claimed, not the level that the ALJ 'pre-determined.'" Id. at *12.

The Eighth Circuit in Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001), sets forth the general proposition that before determining a claimant's RFC, the ALJ "first must evaluate the claimant's credibility." Id. at 1218. However, the Court in Pearsall was not presented with the issues that are now before the Court in this case.

-6-

In the ALJ's decision now before the Court, the ALJ noted that after Plaintiff's right knee surgery in 1997, he was able to return to work. (Tr. 18). He also addressed the fact that after Plaintiff's anterior cervical fusion with iliac crest graft, tricortical with plating, Plaintiff was observed to be doing very well by Dr. D. Luke Knox, the surgeon, who allowed Plaintiff to return to work with limitations of no lifting over 30 pounds and avoid stooping and bending and persistent looking up. (Tr. 18, 275). The ALJ discussed the fact that in 2000, Dr. Knox gave Plaintiff the okay to return to work on a full duty basis. (Tr. 19, 271). The ALJ also addressed the fact that in 2006, Dr. Mohammed Quadeer conducted a consultative examination and found that the cervical spine was non-tender with limited range of motion associated with pain and muscle spasms, that strength in the upper and lower limbs was 5/5 and there was no atrophy of the muscles of the upper and lower limbs observed by the doctor. (Tr. 19, 352). Although Dr. Quadeer observed some sensory changes present in the left upper limb, with decreased sensation present in the C5-C6, C7 and T1 distribution, and diminished sensation in the right upper limb in the palm of the hand and in the C5-7 distribution, Plaintiff's finger-to-nose and heel-to-shin rests were normal. (Tr. 19). Plaintiff's gait was safe and stable. (Tr. 19, 352). Dr. Quadeer also found Plaintiff's grip strength to be 5/5 bilaterally strong and firm and he was able to do both gross and fine manipulations with his hands, and fingertip to thumb opposition was adequate. (Tr. 19). This was also found to be the case on June 10, 2010, when Dr. Quadeer performed another consultative examination. (Tr. 20-21, 362).

The ALJ discussed the fact that Plaintiff's daily activities were described as fairly limited. (Tr. 21). However, he found that Plaintiff's limited daily activities could not be objectively verified with any reasonable degree of certainty, and that even if they were so

limited, it was difficult to attribute that degree of limitation to Plaintiff's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in his decision. (Tr. 21). The ALJ found that overall, Plaintiff's reported limited daily activities were outweighed by other factors discussed in the decision. (Tr. 21). He also noted that none of the physical examinations revealed muscle atrophy that would be shown if Plaintiff was really unable to use his left arm and was required to use his right arm to support his left arm. (Tr. 21). Finally, the ALJ found that Plaintiff had not generally received the type of medical treatment one would expect for a totally disabled individual, as the only follow-up treatment Plaintiff presented was in the form of a consultative examination by Dr. Clemens that Plaintiff's attorney scheduled for evidence in this case. (Tr. 21).

As was found in Bishop, the Court believes in this case that the ALJ cited to specific contradictory testimony and evidence in analyzing Plaintiff's credibility and reviewed the entire record. The fact that the ALJ used "boilerplate" language is not a problem in this case, because the ALJ conducted a thorough analysis, see Romero, 563 Fed. Appx. at 620-621; nor was there evidence indicating that the ALJ first pre-determined Plaintiff's RFC before evaluating the credibility of Plaintiff's testimony. See Scott. 2013 WL 6047555 at *12.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility findings.

**B.     RFC Determination:**

Plaintiff argues that the record supports a more limited capability than that determined by the ALJ's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes

medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In this case, the ALJ discussed all of the relevant medical records, including those that pre-date the application date. The ALJ addressed the examination report prepared by Dr. R. Dale Clemens, who saw Plaintiff on October 9, 2008. (Tr. 19-20). He gave very little weight to Dr. Clemens' opinion, based upon the fact that he saw Plaintiff only one time and that the limitations Dr. Clemens gave Plaintiff were not supported by the medical evidence of his own examination notes. (Tr. 20).

The ALJ gave some weight to the opinions of the physicians of the state agency, and gave Plaintiff the benefit of doubt that he should have some restrictions to avoid work above shoulder level. (Tr. 21). The ALJ further noted that no functional restrictions had been placed on Plaintiff's activities by his treating physicians that would preclude light work activity set forth in the ALJ's RFC determination. (Tr. 22).

Based upon the foregoing, the Court finds there is substantial evidence to support the

AO72A
(Rev. 8/82)

ALJ's RFC determination and the weight he gave to the various opinions of the physicians.

### C.     Failure to Fully and Fairly Develop the Record:

Plaintiff argues that the ALJ failed to fully and fairly develop the record regarding Plaintiff's mental impairment. The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

In this case, the ALJ addressed the Dr. Sally Varghese's Psychiatric Review Technique Report, dated July 19, 2010, wherein Dr. Varghese noted that treatment for a mental impairment

had not been recommended or received. (Tr. 380). She reported that a careful review of all the evidence indicated there were no work-related functional limitations resulting from a possible mental impairment, and that there was no discrete mental impairment. (Tr. 380). She concluded that further development of the possible mental impairment was curtailed, and this was affirmed by Carolyn Goodrich, Ph.D., in a Psychiatric Technique Report dated September 18, 2010. (Tr. 390).

The ALJ also discussed the fact that although Dr. Clemens noted that Plaintiff exhibited no unusual anxiety or evidence of depression (Tr. 20), he then found Plaintiff had marked limitations in certain areas related to Plaintiff's alleged mental impairment. Based upon the fact that Plaintiff's mental functional ability is outside the area of expertise of Dr. Clemens, and the fact that Dr. Clemens' findings were internally inconsistent, the ALJ gave Dr. Clemens' opinion regarding Plaintiff's mental impairment very little weight. (Tr. 20).

The Court finds, based upon the foregoing, that the existing medical sources contained sufficient evidence for the ALJ to make a determination regarding Plaintiff's mental impairment and that the ALJ did not fail to fully develop the record.

### D.   Whether Plaintiff Could Perform His Past Relevant Work:

Plaintiff argues that the RFC finding lacked many necessary limitations and that the ALJ never ascertained the specific "physical and mental demands" of his past work as an electrical assembler.

The ALJ presented the following hypothetical question to the VE:

> Q:  Say we had an individual who's the same age, education, vocational history as this claimant, is limited to light work as described by the Commissioner. That is could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk at least six hours

> of an eight-hour work day and sit at least six hours of an eight-hour work day all with normal breaks. Let's say this individual also needed to avoid work (INAUDIBLEE). Could that individual do any of the work that the claimant's done in the past, either of those jobs?
>
> A. Judge, he would be able to do the electrical assembly as it's normally done, not as he performed it.
>
> Q: That doesn't require overhead, over shoulder work?
>
> A. I've visited there, and I don't think it does. I don't remember seeing anything if it did.
>
> Q. The job in general doesn't require that?
>
> A. No sir.

(Tr. 57).

Although the position of electrical assembler requires frequent reaching, the VE rebutted this possible conflict by explaining that he visited and did not believe the position required overhead shoulder work. See Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007).

The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's response to the hypothetical question posed by the ALJ constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing his past relevant work as an electrical assembler. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.   Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence

supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 13th day of March, 2015.


*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)